# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALICE MUTASA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and KENNETH CUCCINELLI, Acting Director,**<br><br>    **Defendants.** | Civ. No. 20-09321 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    Alice Mutasa and her employer filed an employment visa petition with the United States Citizenship and Immigration Services ("the Service"). The Service rejected her petition because a page was missing, she and her employer corrected the error, and then the Service denied her petition because a required certificate had, by then, expired.

    Mutasa sued the Service, alleging that its actions were unlawful, arbitrary, capricious, and an abuse of discretion. The Service moves to dismiss for failure to state a claim. (DE 16.)[1] The Service is within its rights, and I understand the need for regularized procedures when dealing with many

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1)

    Mot. = Service's Brief in Support of its Motion to Dismiss (DE 16-1)

    Opp. = Mutasa's Opposition to the Service's Motion to Dismiss (DE 17)

    Reply = Service's Reply Brief in Support of its Motion to Dismiss (DE 18)

    Rejection = Rejection Notice (Dec. 19, 2019) (DE 17-3)

    Denial = Service's Decision (Feb. 12, 2020) (DE 17-5)

thousands of applications. Mutasa's plight, however, is sympathetic, and the result may be months of delay and a reapplication, leading to the same result. One dreams of a system with time and resources enough to simply deal with each applicant face-to-face, without respect to matters of form. For good and practical reasons, that is not the system we have. The Service's motion is **GRANTED**.

## I. BACKGROUND

### A. Regulatory Background

An overview of the applicable regulatory scheme is helpful. The Immigration and Nationality Act ("INA") creates different employment-based immigration visas. *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 159 (3d Cir. 2015) (citing 8 U.S.C. § 1153(b)(1)–(5)). One is for "[s]killed workers" and "professionals," the so-called "EB-3" visa. § 1153(b)(3). The EB-3 application process involves two agencies (the Service and the Department of Labor ("DOL")) and three steps.

First, an alien's American employer obtains a labor certification from DOL attesting that there are no qualified workers in the United States available to take the job. *See* § 1182(a)(5)(A)(i). That certification is valid for 180 days. 20 C.F.R. § 656.30(b)(1).

Second, the employer files a "Form I-140" petition with the Service along with the labor certification. 8 C.F.R. § 204.5(*l*)(1), (3)(i). If the visa eligibility requirements are met, the Service "will approve" the visa. *Id.* § 103.2(b)(8)(i). If not all the required evidence is submitted to make the eligibility determination, the Service "in its discretion may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted." *Id.* § 103.2(b)(8)(ii).

Third, the employee files a "Form I-485" application for adjustment of status to legal permanent resident. *Id.* § 245.2(a)(3)(ii). Depending on the circumstances, the I-485 application is filed either concurrently with the I-140 petition or following approval of an I-140 petition. *Id.* § 245.2(a)(2). Subject to

certain additional requirements not relevant here, the Service may approve the application and adjust the alien-employee's status to permanent resident. *See id.* § 245.2(a)(5)(ii).

### B. Mutasa's Application Process

Mutasa is a Zimbabwe citizen with advanced business degrees. (Compl. ¶¶ 25–26.) She has worked for her U.S.-based employer since 2013 under a different visa program. (*Id.* ¶ 27.) Her employer (which the Complaint does not name) decided to transition her to a permanent role, so it began the EB-3 process. (*Id.* ¶¶ 27–29.)

The employer first obtained a labor certification from DOL on June 4, 2019. (*Id.* ¶ 36.) 171 days later, the employer submitted an I-140 petition along with the labor certification to the Service. (*Id.* ¶ 37.) The employer included an I-495 application from Mutasa with the I-140 petition. (*Id.* ¶ 41.)

There was, however, a paperwork mix-up. Inadvertently, page two of the I-485 application was inserted as page two of the I-140 petition. (*Id.* ¶ 43.) The two pages contain nearly the same information—except that page two of the I-140 petition contains a field for the alien's birthdate, while page two of the I-485 application does not. (*Id.* ¶ 44.) As a result, the I-140 petition did not contain Mutasa's birthdate. Nonetheless, supporting documents filed with the petition listed her birthdate at least five times. (*Id.* ¶ 45.)

The Service rejected the I-140 petition because it was missing page two and thereby Mutasa's birthdate. (*Id.* ¶ 42.) In a "Rejection Notice," the Service explained as follows:

> Your 1-140, fees, and any supporting documentation is being returned to you for the following reason(s):
>
> The application/petition you sent us is missing some pages. . . .
>
> The application/petition has not been fully completed. One or more of the following field(s) were not completed:
>
> - Part 3 Date of Birth

(Rejection at 1.)[2]

Mutasa and her employer quickly rectified the error and resubmitted the I-140 petition and I-485 application. (Compl. ¶ 51.) This time, however, the Service denied (as opposed to rejected) the resubmitted I-140 petition because, at that point, the 180-day labor certification validity period had expired. (*Id.* ¶ 52.) The Service explained that "[t]he [labor certification] submitted in support of your petition was certified on November 5, 2018, and remained valid until December 1, 2019. Since your petition was filed on January 31, 2020, the labor certification was no longer valid at the time your petition was filed." (Denial at 1.) Because an I-140 petition requires a valid labor certification, the Service denied Mutasa's petition. (*Id.*)

As a result, Mutasa's visa status is in jeopardy. (Compl. ¶ 58.) The EB-3 process is time-consuming and costly. (*See id.* ¶ 36 (seventh-month process to obtain labor certification); 20 C.F.R. § 656.17 (describing actions an employer must take to obtain a labor certification).) Her current visa is nonpermanent, so there is a risk that she will lose lawful status in the interim if she and her employer have to repeat the EB-3 process. (*See* Compl. ¶ 58.)

### C. Procedural History

Mutasa sued the Service and its then-acting director in his official capacity. (Compl. ¶ 15–16.)[3] She asserted four claims: (1) violation of the INA; (2) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; (3) a

---

[2] Mutasa submitted the Service's written decisions with her Opposition brief. As documents explicitly relied upon in the Complaint, I may consider them on a motion to dismiss. *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020); *see also Kerrigan v. Chao*, Civ. No. 04-1189, 2004 WL 2397396, at *1 (E.D. Pa. Oct. 26, 2004) ("In reviewing the propriety of administrative proceedings . . . the Court may consider at the Rule 12(b)(6) stage the record of administrative actions, opinions, and decisions on which a Plaintiff bases his complaint.").

[3] The Service currently has no director. USCIS, *Tracy Renaud, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services; Director* https://www.uscis.gov/about-us/organization/leadership (last visited March 30, 2021). Were this case to continue, I could substitute in any newly appointed director. Fed. R. Civ. P. 25(d).

claim under the Mandamus Act ("MA"), 28 U.S.C. § 1361, to compel the Service to accept her petition and grant a visa; and (4) a claim under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), for a declaratory judgment that the Service violated the INA and APA. (*Id.* ¶¶ 63–79.) The Service moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Mot.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

APA cases differ somewhat. "When a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law." *Neto v. Thompson*, --- F. Supp. 3d ----, ----, Civ. No. 20-00618, 2020 WL 7310636, at *2 (D.N.J. Dec. 10, 2020) (quoting *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

## III. DISCUSSION

This is an APA case.[4] "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to

---

[4] Mutasa's other claims are subsumed by her APA claim. As to her INA claim, the INA does not contain its own private right of action. *E.g., Smith v. Smith*, Civ. No. 20-9120, 2020 WL 5626982, at *2 (D.N.J. Aug. 18, 2020) (collecting cases). Nonetheless, the APA allows a plaintiff to bring a claim that an agency violated a statute even if the statute itself does not provide a cause of action. *Lexmark Int'l, Inc. v. Static Control*

review by the courts." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quotation marks and citation omitted). The APA empowers courts to review agency actions for whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Complaint alleges various ways in which the Service's rejection and then denial of Mutasa's petition was contrary to the INA's implementing regulations, arbitrary and capricious, and an abuse of discretion. The Service's Motion responds by explaining how the rejection and denial comported with the law and were otherwise reasonable. I take up the Service's arguments first as they relate to its initial rejection of the petition due to the missing page and birthdate, and then to its subsequent denial due to the expired labor certification.[5]

### A. Initial Rejection

Mutasa alleges that there was no support in the regulations for the Service's rejection, so it was contrary to law. Even if it was not contrary to law, she argues, the rejection was arbitrary and capricious or an abuse of discretion. I disagree; the Service's rejection was rigid and bureaucratic, but it was supported by the regulations and otherwise reasonable.

---

*Components, Inc.*, 572 U.S. 118, 130 (2014); *see also Neto*, 2020 WL 7310636, at *2 (claim that the Service wrongfully denied adjustment application brought under the APA). As to her MA claim, the APA provides a mandamus remedy, so her MA claim is duplicative. *Thompson v. U.S. Dep't of Labor*, 813 F.2d 48, 52 (3d Cir. 1987); *see also Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (analyzing an MA claim as an APA claim). As to her DJA claim, the DJA does not create a separate cause of action, just "a remedy for controversies otherwise properly within the court's subject-matter jurisdiction." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016). Thus, an APA violation underlies all her claims.

[5] I note briefly at the threshold that, although unchallenged by the Service, Mutasa has standing and falls within the INA's zone of interests, even though it was her employer who handled the petition. *See Shalom Pentecostal Church*, 783 F.3d at 162–64.

1. **Contrary to Law**

The Service argues that it has authority to reject petitions with incomplete forms. (Mot. at 5–7.) The Service points to three regulations. One provides that "[e]ach benefit request must be *properly completed* and filed with all initial evidence required." 8 C.F.R. § 103.2(b)(1) (emphasis added). Another provides that "[a] benefit request will be rejected if it is not . . . [f]iled in compliance with the regulations governing the filing of the specific application, petition, form, or request." *Id.* § 103.2(a)(7)(ii)(C). Along those lines, another provides that "[e]very form . . . must be submitted . . . and executed in accordance with the form instructions," and those instructions are "incorporated into the regulations." *Id.* § 103.2(a)(1). The instructions for the I-140 form stated that "[i]f you do not *completely fill out this petition*, you will not establish a basis for your eligibility and [the Service] may reject or deny your petition." Form I-140 at 10, *available at* https://www.regulations.gov/document/USCIS-2007-0018-0299 (emphasis added).[6]

---

[6] Mutasa asks me to disregard the form instructions because they were not promulgated by notice-and-comment rulemaking. (Opp. at 14.) Generally, agency rules must go through a procedure known as notice-and-comment. *Pa. Dep't of Human Servs. v. United States*, 897 F.3d 497, 505 (3d Cir. 2018). "If a rule is more properly classified as an 'information collection' mechanism, however, that rule is not subject to APA notice-and-comment procedures and instead falls under the ambit of the Paperwork Reduction Act ('PRA'), 44 U.S.C. § 3501, *et seq.* . . . ." *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 54 (D.D.C. 2018); *see United Steelworkers of Am., AFL-CIO-CLC v. Pendergrass*, 855 F.2d 108, 111–12 (3d Cir. 1988). "Typical information collection requests" include agency forms. *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 33 (1990). The Service appears to have followed the PRA process. *See* 5 C.F.R. § 1320.10(a)–(b) (describing PRA process in which an agency solicits comments and submits the form for review by the Office of Management and Budget ("OMB"), and OMB approves the form and assigns a control number); Agency Information Collection Activities; Extension, Without Change, of a Currently Approved Collection: Petition for Amerasian, Widow(er), or Special Immigrant, 83 Fed. Reg. 8,499 (Feb. 17, 2018) (submitting the form for review and clearance); Form I-140 at 1 (showing OMB control number and dated May 9, 2018 with an expiration date of May 31, 2020). Thus, there is no infirmity with the form, and I may consider it.

Mutasa responds that her I-140 form was, in effect, "complete" because her missing birthdate was ascertainable from other documents submitted. (Opp. at 12–13.) She relies on one regulation providing that "[a]ny evidence submitted in connection with a benefit request is incorporated into and considered part of the request." 8 C.F.R. § 103.2(b)(1).

The Service has the better reading of the regulations and has thus shown that it had a legal basis for the rejection. An I-140 form must be "properly completed" and "completely fill[ed] out." *Id.* § 103.2(b)(1); Form I-140 at 10. Mutasa's form did not meet that standard because it lacked a page. She is correct that the *information* on that missing page could be gleaned elsewhere in her packet. But the regulations and instructions speak to the necessity of correctly completing and filling out a form. Providing the required information in some other manner does not fulfill the separate and distinct requirement that the applicant "completely fill out [the] petition." Form I-140 at 10. Accordingly, the Service has shown that its rejection was in line with the applicable regulations.

### 2. Arbitrary and Capricious or an Abuse of Discretion

That an agency's actions have legal support does not necessarily establish that the agency complied with the APA. *See Michigan v. EPA*, 576 U.S. 743, 750 (2015) ("Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." (citation omitted)); *Neto*, 2020 WL 7310636, at *3 (in arbitrary-and-capricious cases, a plaintiff alleges that an agency legally has authority but exercised it unreasonably (citation omitted)). My review here is "narrow"; I do not "substitute [my] judgment for that of the agency . . . but instead [] assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Regents*, 140 S. Ct. at 1905 (quotation marks and citations omitted). Mutasa alleges three ways that the denial was arbitrary and capricious or an abuse of discretion. (*See* Compl. ¶ 49.)

### a. Request for Evidence

First, Mutasa alleges that the Service could have—and should have, under its own policies—requested evidence of her missing birthdate. (*Id.*) The regulations provide that "[i]f all required initial evidence is not submitted . . . , [the Service] in its discretion may . . . request that the missing initial evidence be submitted." 8 C.F.R. § 103.2(b)(8)(ii).[7] Mutasa rightly acknowledges that this regulation gives the Service discretion to request, or not request, additional evidence. But agency policy, she says, has cabined that discretion. (Opp. at 17.) Indeed, "if an agency announces and follows . . . a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be overturned as arbitrary, capricious, [or] an abuse of discretion." *M.B. v. Quarantillo*, 301 F.3d 109, 112–13 (3d Cir. 2002) (citation omitted); *see also id.* at 116 (applying that principle to field guidance for adjudications by the Service's predecessor agency); *Yafai v. Cuccinelli*, No. 20 Civ. 2932, 2020 WL 2836975, at *4 (S.D.N.Y. June 1, 2020) (Service's failure to follow its usual procedures when adjudicating adjustment applications could be arbitrary and capricious); *Fontenoy Eng'g, Inc. v. Baran*, No. 18-cv-03361, 2020 WL 137155, at *6 n.3 (N.D. Cal. Jan. 13, 2020) (same); *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 53 (D.D.C. 2011) (same).

She points to a policy memo from the Service. USCIS, *Issuance of Certain RFEs and NOIDs; Revisions to Adjudicator's Field Manual (AFM) Chapter 10.5(a), Chapter 10.5(b)*, PM-602-0163 (July 13, 2018), *available at* https://www.aila.org/infonet/uscis-policy-memo-issuance-of-rfes-and-noids (hereinafter "Policy Memo"). The Policy Memo "provides guidance to . . . adjudicators regarding the discretion to deny an application, petition, or request without first issuing a Request for Evidence," or "RFE." *Id.* at 1. A previous memo had informed adjudicators that they should issue an RFE

---

[7] The Service argues that this regulation does not apply to Mutasa's case because it requires that a petition first be accepted for filing, which Mutasa's was not. (Mot. at 9–10.) That prerequisite cannot be found in the regulation, which states that it applies when evidence is "submitted."

before denying a petition "unless there was 'no possibility' that the deficiency could be cured by submission of additional evidence." *Id.* at 2. But the Policy Memo rescinded the "no possibility policy" and "restore[d]" the Service's "full discretion" to deny a petition without first issuing an RFE. *Id.* The Memo further provided that a denial without sending an RFE would be appropriate when "form instructions require the submission of an official document or other form or evidence establishing eligibility at the time of filing and there is no submission." *Id.* at 3.

It is true that the Memo explained that this change in policy was "not intended to penalize filers for innocent mistakes." *Id.* at 2. Likewise, a follow-up document explained that "[i]f the initial required evidence is missing, adjudicators should take into account various factors to determine whether the missing evidence is due to an innocent mistake or misunderstanding and to what extent the petitioner or applicant tried to comply with the form instructions and regulatory requirements." USCIS, USCIS Policy Update on Issuing RFEs and NOIDs at 4 (Sept. 6, 2018), *available at* https://www.uscis.gov/sites/default/files/document/foia/USCIS_Policy_Update_on_Issuing_RFEs_and_NOIDs.pdf (hereinafter "Policy Update").

Still, the Policy Memo and Update do not render the Service's rejection here arbitrary, capricious, or an abuse of discretion. This is so for two reasons.

First, the Policy Memo and Update do not clearly apply to Mutasa's situation. They provide guidance regarding *missing evidence*, not *incomplete forms*. That is, they are directed at scenarios in which a petitioner does not provide the required supporting documentation. *See* Policy Memo at 3 (giving an example where an applicant omits an affidavit required for some visas). The problem with Mutasa's petition was that her form was incomplete. As explained, the regulations require complete forms and proper evidence; Mutasa's first submission was deficient as to the former, while the Policy Memo and Update deal with the latter. So understood, the Policy Memo and Update

are not so on-point that the Service clearly or irrationally departed from them in this case.[8]

Second, the Policy Memo expressly restores "full discretion" to the Service in deciding whether to issue RFEs. Accordingly, while some policy documents can cabin discretion, *see M.B.*, 301 F.3d at 112–13, the Memo is not such a document.

Thus, neither the Policy Memo nor Update represents a policy from which the Service's departure could be regarded as arbitrary, capricious, or an abuse of discretion.

### b. Reliance on Other Documents

Mutasa alleges it was unreasonable for the Service to reject her petition for a missing birthdate when it could have discerned her birthdate from other documents she submitted. (Compl. ¶ 49.) As a matter of common sense, her argument is plausible, but as a matter of administrative law, it is unavailing. Put that way, the Court may regret that administrative law and common sense have parted ways, but the Service has sound institutional reasons for rigid adherence to its procedures.

"An action will not be deemed arbitrary, capricious, or an abuse of discretion simply because one may happen to think it ill-considered, or to represent the less appealing alternative solution available . . . . Rather, we require that the agency's action be rationally related to the purposes to be served . . . ." *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 223 (3d Cir. 2003) (citation omitted). The Service has an interest in ensuring that all applicants follow procedure, including filing complete forms. *Cf. Regents*, 140 S. Ct. at 1909 ("[M]en must turn square corners when they deal with the Government." (citation omitted)). As the Service explains, if it were required to discern

---

[8] Even if the Policy Memo were interpreted to apply to incomplete forms, the Memo arguably authorizes a rejection here. The Memo provides that denial is appropriate when "form instructions require the submission of an official document or other *form* . . . at the time of filing and there is no submission." Policy Memo at 3 (emphasis added). Here, there was no complete submission of an I-140 form.

11

information from supporting documents, then the forms themselves would "become voluntary." (Reply at 2.) Indeed, while the error in this case was minor, if the Service excuses the filing requirements in this case, it may need to so in others. *See Nazareth Hosp. v. Sec'y U.S. Dep't of Health & Human Servs.*, 747 F.3d 172, 179–80 (3d Cir. 2014) ("If [an] agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." (citation omitted)). The Service perhaps exaggerates in arguing that the forms would thereby become a nullity. But the Service's efficiency concerns are weighty; administrative procedures are standardized so that procedures need not be improvised or argued about in each case. Here, perhaps, the birthdate could have been found easily—but how easy is easy enough? Simple and clear procedures quickly devolve into case-by-case adjudication. Arbitrariness is created, not eliminated, by such a system.

This form is designed so that the applicant's birthdate is in a particular location and can be read (or scanned) instantaneously. Substitution of a lengthier, less well-defined process—even one that takes minutes, rather than seconds—may, when multiplied by thousands of instances, create inefficiencies that harm all applicants.

Accordingly, it was not arbitrary and capricious or an abuse of discretion for the Service to require the correct paperwork instead of undertaking to find the necessary information elsewhere in Mutasa's submission.

### c. Interview

Mutasa alleges that the Service could have accepted her petition for filing and asked about her birthdate in the interview that follows in the EB-3 process. (Compl. ¶ 49.) This allegation fails for the same reasons given above. While questioning during an interview perhaps was an alternative, the Service was not required to adopt it, and its rejection was still supported by law and its interests in procedural regularity. As a result, it was not arbitrary and capricious or an abuse of discretion. *Yeboah*, 345 F.3d at 223.

\* \* \*

In sum, the Service's initial rejection was supported by the regulations and otherwise reasonable under my deferential standard of review. Accordingly, Mutasa's allegations regarding the initial rejection do not plausibly state an APA claim.

### B. Subsequent Denial

The Service defends the subsequent denial of Mutasa's resubmitted petition on the ground that, as it reads the regulations, the labor certification was no longer valid. (Mot. at 7.) Mutasa counters with materials from the Service which in her view demonstrate that its interpretation is wrong or inconsistent with prior adjudications. (Opp. at 20–22.) I analyze the text and purpose of the relevant regulations and then turn to Mutasa's arguments.

#### 1. Regulatory Text and Purpose

The relevant DOL regulation provides that a certification "expires if not filed in support of a Form I-140 petition with the Department of Homeland Security within 180 calendar days of the date [DOL] granted the certification." 20 C.F.R. § 656.30(b)(1). There is no dispute that Mutasa's resubmission occurred more than 180 days after her employer received the certification. The issue is whether the Service must approve a resubmitted I-140 petition based on a previously filed labor certification when that certification was first submitted during its initial 180-day validity period. In other words, Mutasa contends that because her certification was first submitted within the 180-day period, its validity was "effectuated" for longer-term use such that she could use it in support of her later-submitted petition. (Opp. at 20.)

The Service argues that, because it rejected Mutasa's initial submission, the certification was never "filed" within the 180-day period. (Mot. at 7.) The certification regulation does not define "filed." But the visa regulations explain that "[a] petition is considered properly filed if it is: (1) *Accepted for processing* under the provisions of part 103; [and] (2) Accompanied by any required individual labor certification." 8 C.F.R. § 204.5(a) (emphasis added); *see*

13

*Sanjour v. EPA*, 56 F.3d 85, 88–89 (D.C. Cir. 1995) (en banc) (related regulations from different agencies should be construed together). Relatedly, the visa regulations provide that "[a] benefit request which is rejected will not retain a filing date." *Id.* § 103.2(a)(7)(ii).

I agree with the Service here; Mutasa's initial submission was not "properly filed" because it was never "[a]ccepted for processing," *id.* § 204.5(a)(1), and therefore did not "retain a filing date," *id.* § 103.2(a)(7)(ii). Rather, the Service rejected it as incomplete. As a result, her labor certification was not "filed in support of a Form I-140 petition" because no petition was every filed. 20 C.F.R. § 656.30(b)(1). Indeed, the rejection notice specifically provided that it was returning, not retaining, the labor certification, so it is clear it was never filed with the Service. (Rejection at 1 ("The petition type you are requesting requires the submission of a valid Labor Certification per the form instructions. As such, your petition and supporting documentation are being returned to you.").)[9]

If the text of the regulation were not enough, the regulation's purpose also supports the Service's application here. The 180-day validity period "ensures that the snapshots of the labor market taken when labor certifications are approved are not stale appraisals of the labor market when the visa petitions are filed." *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 502

---

[9] The Complaint alleges that the Service's denial was contrary to the underlying statute. (Compl. ¶ 53.) Mutasa, however, does not pick up this line of argument in her brief. Regardless, it is unavailing.

The EB-3 statutory provision states that an EB-3 visa "may not be issued to an immigrant . . . until the consular officer is in receipt of a [labor certification]." 8 U.S.C. § 1153(b)(3)(C). The Complaint alleges that the Service was "in receipt" of the certification by virtue of her first submission. (Compl. ¶ 53.)

That is incorrect as a matter of law and fact. First, "in receipt" is ambiguous; it could mean received by the Service generally or, more specifically, accepted for filing. Accordingly, the Service could promulgate rules creating a filing process as a means to flesh out "in receipt." *See Chevron, USA, Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842–43 (1984). Second, the Service physically returned the certification when it rejected Mutasa's first petition, so it was never "in receipt" of the certification then.

(7th Cir. 2009); *see also* Labor Certification for the Permanent Employment of Aliens in the United States; Reducing the Incentives and Opportunities for Fraud and Abuse and Enhancing Program Integrity, 72 Fed. Reg. 27,904, 27,924 (May 17, 2007) (codified at 20 C.F.R. Pt. 656) (explaining purposes of rule); 8 U.S.C. § 1182(a)(5)(A)(i)(I) (underlying statute providing that DOL must certify that the supply of workers is insufficient "at the time of application for a visa and admission to the United States"). Were certifications considered filed and thereby evergreen, even when submitted with a faulty visa petition, then petitioners could lodge certifications with the Service but follow up with a finalized petition at some indefinite time, perhaps far in the future. Such a practice runs counter to a scheme where DOL and the Service require certifications and petitions to be filed together within 180 days so that any granted visas respond to current labor markets.

DOL's underlying reasons for the 180-day period also undermine Mutasa's allegations that the result here is "inequitable." (Compl. ¶ 55.) It is here, by the way, that we understand the true source of her predicament. She and her employer had 180 days to submit the petition; they filed it on day 171, leaving little or no margin for error. DOL advisedly established a generous 180-day period (as opposed to a proposed 45-day period) for the very purpose of providing applicants adequate time to get their paperwork straight: to "provid[e] sufficient flexibility for contingencies in the employment-based immigration process." Labor Certification, 72 Fed. Reg. at 27,924. DOL contemplated situations like Mutasa's, in which mistakes or delays could run out the clock. *See id.* Accordingly, DOL concluded that 180 days would be sufficient time to get a petition together, submit it, and iron out any issues that arose. *See id.* That could have happened here. Mutasa's employer, however, left little time for delays or mishaps, and thereby took on the risk of the application's need to be corrected.

So, at the very least, the equities are not all on one side. Mutasa and her employer bear some responsibility for acting contrary to the regulatory scheme.

15

### 2. Mutasa's Counter Sources

In response, Mutasa leans on two agency materials which she contends show that the Service should have considered the certification she filed with her first submission. (Opp. at 20, 22.) First, she cites the Adjudicator's Field Manual published by the Service to guide employees adjudicating applications. USCIS, Adjudicator's Field Manual § 1.1 (hereinafter "AFM"). Second, she relies on an unpublished opinion from the Administrative Appeals Office ("AAO"), an appellate body that hears appeals of certain petition denials. 8 C.F.R. § 103.3(a)(1).

At the threshold, neither source has the force of law, and they cannot overcome any contrary regulatory text. *See Zizi v. Bausman*, 306 F. Supp. 3d 697, 704 (E.D. Pa. 2018) (AFM) (citing *Lawrence v. City of Philadelphia*, 527 F.3d 299, 316 n.6 (3d Cir. 2008)); *Chursov v. Miller*, No. 18-cv-2886, 2019 WL 2085199, at *7 (S.D.N.Y. May 13, 2019) (unpublished AAO decisions); *Pulotov v. USCIS*, Civ. No. 16-6067, 2018 WL 934612, at *8 (E.D. Pa. Feb. 16, 2018) (same). Further, even if the regulatory text were ambiguous (it is not), interpretations contained in the AFM or an unpublished AAO decision would not receive deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019) (agency interpretations of ambiguous regulations receive deference only if, among other things, they come from "vehicles[] understood to make authoritative policy"); *Cruz-Miguel v. Holder*, 650 F.3d 189, 200 (2d Cir. 2011) (AFM not such a source); *Chursov*, 2019 WL 2085199, at *7 (unpublished AAO opinions not such a source).

Even setting aside those threshold concerns, and assuming that such materials could be relevant to arbitrary-and-capricious review, I find they do not help Mutasa.

#### a. AFM

The AFM states that the Service "will reject Form I-140 petitions . . . if the labor certification has expired" but notes an "[e]xception," upon which Mutasa relies. AFM § 22.2(b)(3)(F)(i). The exception provides as follows:

16

> [The Service] will continue to accept amended or duplicate Form I-140 petitions that are filed with a copy of a labor certification that is expired at the time the amended or duplicate Form I-140 petition is filed, if the original labor certification was submitted in support of a previously filed petition during the labor certification's validity period.

*Id.* This guidance only applies to "previously *filed* petitions." *Id.* (emphasis added). As explained above, Mutasa's petition was never "filed."

Moreover, relevant examples do not encompass Mutasa's situation. The AFM lists situations in which such amended filings "may occur":

> • A new petition is required due to a successor-in-interest employer change;
>
> • The petitioning employer wishes to file a new petition subsequent to the denial, revocation or abandonment of the previously filed petition, and the labor certification was not invalidated due to material misrepresentation or fraud relating to the labor certification application;
>
> • An amended petition is filed to request a different visa classification than the visa classification requested in the previously filed petition; or
>
> • The previously filed Form I-140 petition has been determined to have been lost by [the Service] . . . .

*Id.* The first, third, and fourth scenarios clearly do not apply here. The second, upon initial reading, seems to have some potential; but Mutasa's second petition was not filed following a "denial, revocation or abandonment" of her first petition—it was filed following a rejection, pursuant to which it was not filed at all.

Accordingly, the AFM does not suggest that the Service misapplied the regulatory text here. Nor does the AFM provide a general policy that the Service departed from such that the Service could be found to have acted in an arbitrary and capricious way.

### b. AAO Opinion

The AAO opinion is also unavailing. In *In re: [Redacted]*, a petitioner filed a petition with a valid labor certification, but the petition was denied because the petitioner sought (mistakenly, it seems) a visa that did not correspond to

17

the specific labor certification. 2013 WL 5722861, at *1 & n.1 (AAO Feb. 5, 2013). The AAO held that a subsequent correct petition should be granted, even though it was filed more than 180 days after the labor certification was issued, because the certification had been "used in support of a Form I-140 petition which was filed . . . less than 180 days from the . . . certification date." *Id.* at *1. The certification, the AAO explained, "did not expire and was available for use in support of the present petition." *Id.*

That case is distinguishable because the first petition was accepted for filing but denied on the merits. Indeed, the opinion explicitly states that the first petition was "filed." *Id.* Here, we deal with a rejection that prevented the petition and certification from being "filed" upon the first submission.

A more recent AAO opinion confirms as much. In *Matter of P-C-*, a petitioner submitted a certification and an outdated I-140 form. 2019 WL 4879259, at *1 (AAO Sept. 16, 2019). The petition was "rejected," and the petitioner resubmitted the materials with the correct form, but by then the certification was older than 180 days. *Id.* The AAO explained that the second submission could be denied because, under the regulations, the certification was not "filed" within its 180-day validity period, since the first submission was rejected. *Id.* In that respect, the facts of *P-C-* are indistinguishable from those in Mutasa's case. Accordingly, based on these two AAO opinions, the Service has consistently applied the regulations, as it also did here, making its actions reasonable. *See Kisor*, 139 S. Ct. at 2418 (courts should not defer to agency interpretation of regulations if the interpretation conflicts with prior ones).

\* \* \*

In sum, the Service's denial was supported by the regulations and reasonable. As such, Mutasa cannot state an APA claim based on the denial.

## IV. CONCLUSION

For the reasons set forth above, the Service's motion to dismiss is granted.

A separate order will issue.

Dated: March 31, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**