UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALICE MUTASA,**<br><br>       **Plaintiff,**<br><br>       v.<br><br>**U.S. CITIZENSHIP AND IMMMIGRATION SERVICES and KENNETH CUCCINELLI in his capacity as Acting Director,**<br><br>       **Defendant.** | Civ. No. 20-9321 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Alice Mutasa and her employer filed an employment visa petition with the United States Citizenship and Immigration Services ("the Service"). The Service rejected her petition because a page was missing, she and her employer corrected the error, and then the Service denied her petition because a required certificate had, by then, expired.

Mutasa sued the Service, alleging that its actions were unlawful, arbitrary, capricious, and an abuse of discretion. The Service successfully moved to dismiss (DE 16, 19)[1] and Mutasa was granted leave to amend (DE 32). The Service now moves to dismiss Mutasa's Amended Complaint (DE 33). For the following reasons, the Service's motion to dismiss (DE 40) is **GRANTED**.

---

[1]  Certain citations to the record are abbreviated as follows:

DE = docket entry in this case

Am. Compl. = Amended Complaint (DE 33)

Mot. = The Service's Brief in Support of its Motion to Dismiss (DE 40-1)

Opp. = Mutasa's Opposition to the Service's Motion to Dismiss (DE 45)

Reply = The Service's reply in support of its Motion to Dismiss (DE 48)

I. **BACKGROUND & PROCEDURAL HISTORY**

I write primarily for the parties and assume a familiarity with the facts of the case. A more detailed background can be found in my prior opinion granting dismissal of the original complaint. (DE 19.)

To briefly summarize: Mutasa is a Zimbabwean citizen who received a graduate degree from a United States university and has been working for her current employer on an H-1B nonimmigrant visa since 2013. (Am. Compl. ¶ 27–30.) In 2018 Mutasa and her employer began the process of adjusting her status from a nonimmigrant visa to a permanent residency under the EB-3 visa category. (*Id.* ¶ 31.) To successfully complete this process, the applicant's employer must first obtain a labor certification from the Department of Labor attesting that there are no qualified workers in the United States available to take the job. *See* 8 U.S.C. § 1182(a)(5)(A)(i). That certification is valid for 180 days. 20 C.F.R. § 656.30(b)(1). Once this certification is obtained, the employer files Form I-140 and the employee files Form I-485 with the Service. 8 C.F.R. § 204.5(*l*)(1), (3)(i); § 245.2(a)(3)(ii). These forms are specifically for individuals who already have legal work status to allow them to adjust that status to permanent residency and are different from those filed by other types of applicants looking to obtain entrance to or residence in the United States.

Mutasa's employer obtained the DOL certification on June 4, 2019, and it remained valid for the next 180 days. (Am. Compl. ¶ 38.) Unfortunately, Mutasa and/or her employer allowed most of the 180-day period to lapse before submitting her I-140 and I-485 forms, leaving little margin for error. Mutasa's employer inadvertently replaced the second page of the I-140 form with the second page of the I-485 form, thus rendering her application incomplete when it was filed with the Service on November 22, 2019. (*Id.* ¶ 39.) The 180-day DOL certification period expired 9 days later, on December 1, 2019. On December 19, 2019, the Service rejected Mutasa's application because of the missing page. (*Id.* ¶ 44.) Mutasa and her employer quickly filed corrected paperwork on December 26, 2019, but at that point the certification

2

had expired. (*Id.* ¶ 53.) On July 23, 2020, Mutasa filed this lawsuit with the goal of forcing the Service to accept her application. It is unclear whether she and her employer have sought a new certification so that she can reapply.

In my prior opinion granting the Service's motion to dismiss the original complaint (DE 19) I explained that this is fundamentally an Administrative Procedure Act ("APA") case and that neither the Service's original nor subsequent rejection of Mutasa's application violated the APA by being arbitrary or capricious. (*Id.* at 5.)

In her Amended Complaint, Mutasa adds allegations on two distinct subjects. First, she adds a discussion of *Vangala, et al. v. USCIS*, a lawsuit that challenged the Service's application of a "no blank space rejection policy" to applicants using some types of forms, including I-589 (for asylum applications) and Form I-918 (for U visa petitions, for survivors of domestic violence and other crimes who voluntarily cooperate with law enforcement). (*Id.* ¶ 63 (citing *Vangala,* No. 20-8143 (N.D. Cal. November 19, 2020)).) In December 2020, the Service acknowledged that the rejection policy existed for the I-589 and I-918 forms and, as part of a settlement that included no admission of wrongdoing, agreed to stop applying the policy to those forms. Notably, the *Vangala* suit did not involve any allegations related to I-140 or I-485 forms. On April 1, 2021, after the Biden administration took office, the Service announced that it would no longer reject Forms I-589, I-918, and I-612 if they include a blank space and thus had "reverted back to the rejection criteria that existed for these forms before October 2019." (Am. Compl. ¶ 64.) Mutasa alleges that the no blank space rejection policy was applied but never formalized with respect to other types of applications. (*Id.* ¶ 66–69.) Indeed, the Service considered but decided not to formalize it as a rule in the summer of 2020. (*Id.*) Nevertheless, Mutasa maintains that the policy was applied to her application and was unlawful.

Second, Mutasa argues that rejecting incomplete applications, especially ones where the missing information could easily be gathered from other related

3

documents, is inefficient because the Service forfeits the application fee and then has to analyze the subsequent, remedied application. (*Id.* ¶ 73–77.)

My prior opinion and order dismissed Mutasa's initial complaint without prejudice on March 31, 2021. (DE 19, 20.) She then moved for leave to amend (DE 21), which was opposed by the Service (DE 27) but granted by Magistrate Judge Edward S. Kiel on August 5, 2021 (DE 32). On August 13, 2021, Mutasa filed her Amended Complaint. (DE 33.) The Service then moved to dismiss the Amended Complaint. (DE 40.) Mutasa filed a brief in opposition to that motion (DE 46), and the Service filed a reply (DE 48). This motion is fully briefed and ripe for decision.

## II.   STANDARDS OF REVIEW
### A. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.  DISCUSSION

The Amended Complaint's two new sets of allegations do not raise Mutasa's claims to a plausible level, and they must therefore be dismissed. The broader reasons for dismissal are discussed a length in my first opinion. (DE 19) Here, I focus specifically on the new allegations in the Amended Complaint.

4

### A. Preclusive Effect of Amendment

As a preliminary issue, Mutasa argues that because she was given leave to amend, this court has already determined that her amended complaint satisfies the Rule 12(b)(6) standard and thus should not be dismissed. (Opp. at 8–9.) That is incorrect.

A motion to amend should be granted unless the amendment is (1) unduly delayed or prejudicial; (2) made in bad faith; (3) made with a dilatory motive; (4) the result of the failure to cure previous deficiencies; or (5) futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In giving Mutasa leave to file her amended complaint, Magistrate Judge Edward S. Kiel determined that amendment would not be futile under Fed. R. Civ. P. 15.

True, futility generally refers to the concept that the proposed amendment would not survive a Rule 12(b)(6) motion to dismiss, even if all allegations contained in the proposed pleading were accepted as true. Given the liberal standard for the amendment of pleadings, however, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted); 6 Wright, Miller & Kane Federal Practice and Procedure, § 1487 (2d ed. 1990).

While tracking Rule 12(b)(6), Rule 15 futility does not require substantive motion practice on the merits of the claims:

> If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper. This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.

*Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (emphasis added) (citations omitted); *see also Marlowe Patent Holdings LLC v. Dice Electronics, LLC*, 293 F.R.D. 688, 695 (D.N.J. 2013).

Therefore, it is possible, indeed common, for an amended complaint to be found not futile but to later be dismissed on full scrutiny under Rules 12(b)(6)

or 12(c). That is precisely what Magistrate Judge Kiel contemplated in his oral ruling. Essentially, he ruled that he would permit amendment, precisely *because* it would give the plaintiff the opportunity to present the new allegations for my consideration in the context of a motion to dismiss:

> And although Judge McNulty's decision was based on a legal conclusion that the rejection of plaintiff's petition was reasonable under the facts presented in the complaint, **I cannot and should not substitute my judgment for Judge McNulty's consideration of the newly presented factual allegations in plaintiff's proposed amended complaint.**
>
> Judge McNulty may conclude that the change in policy by the Service relating to other types of visa petitions and the new case law cited by plaintiff may be relevant to determining whether the Service acted unreasonably as to plaintiff's petition. To deny a plaintiff the opportunity to recast their complaint with new allegations that plaintiff claims bolsters her claims as well as address the deficiency raised -- as well as address the deficiencies raised in Judge McNulty's opinion would, in my opinion, be inequitable, would not promote judicial efficiency, and would be prejudicial to plaintiff.
>
> In sum, **whether plaintiff has addressed the futility issues raised in Judge McNulty's opinion should be for Judge McNulty's consideration.**
>
> **I suspect defendants will likely file a motion to dismiss** largely modeled after their opposition to plaintiff's motion to amend the complaint. I don't find there will be any significant prejudice to defendant in granting leave to plaintiff to file the amended complaint.

(Tr. of Mag. Judge Kiel's oral ruling at pp. 10–11 (DE 35) (emphasis added)).

I therefore rule that the current motion to dismiss is not precluded by Magistrate Judge Kiel's liberal grant of the motion to amend.

### B. *Vangala* Litigation

*Vangala* was a class action lawsuit that ended in a settlement agreement in July 2021. The settlement agreement defined the "no blank space rejection policy" as "USCIS's policy or policies that required its personnel to reject any

*Form I-589 or Form I-918* application or petition if any response field to a question on such benefit request was left blank" (*Vangala v. USCIS*, No. 20-8143 (N.D. Cal), Docket Entry 43-1 at 3 (emphasis added).) The settlement agreement also notes that the Service "identified 43,501 submissions of USCIS Form I-589, Application for Asylum and for Withholding of Removal, and 17,000 submissions of USCIS Form I-918, Petition for U Nonimmigrant Status, that may have been rejected pursuant to the No Blank Space Rejection Policy." (*Id.* at 2.) As part of the settlement agreement, the Service also agreed to cease applying the rejection policy to Forms I-914, I-360, and I-751, removed any references to the policy from its website and now "does not apply the No Blank Space Rejection Policy to other immigration benefit requests." (*Id.* at 5.)

Nothing in the *Vangala* litigation, however, makes reference to the I-485 or I-140 forms that are relevant here. They are outside the scope of the *Vangala* settlement. Nor does the *Vangala* case support the proposition that the Service applied the *same* "blank space" policy to reject Mutasa's I-485 and I-140 forms, which were missing an entire page. At best, the Amended Complaint states that the Service "*has been accused* of abusing its authority to reject other types of applications beyond the three that the agency has publicly acknowledged, including Form I-485 (adjustment of status applications)." (Am. Compl. ¶ 65.)[2] This is not an admission or a statement of policy by the Service. Rather, it is an adversary's statement about the Service's procedures, based on unspecified "reports" which it has "passed on[]" to the Service.  An allegation, however,

---

[2]     This allegation cites to a question-and-answer document from the National Immigration Litigation Alliance, dated January 14, 2021. The document states, in response to the question "To what applications has USCIS applied the rejection policy?" that "counsel in *Vangala* have passed onto USCIS reports of the policy being applied to other types of applications, such as adjustment of status (Form I-485)."*USCIS Updates Intake Policies and Halts Application of the Rejection Policy in Response to* Vangala v. USCIS, *Frequently Asked Questions,* National Immigration Litigation Alliance (January 14, 2021), https://www.nwirp.org/uploads/2021/01/Vangala-FAQ-and-Updated-USCIS-Guidance.pdf.

7

must be plausibly supported by facts, not merely by the happenstance that someone else made the same allegation.

In sum, then, the Amended Complaint says nothing substantive about the "no blank space rejection policy" being applied to Mutasa's I-485 form, and nothing at all about the I-140 form. Mutasa notes correctly that at this stage I must make all possible inferences in her favor. (Opp. at 9.) Such inferences, however, must be based on pleaded facts. *Iqbal*, 556 U.S. at 678. Here, such facts are lacking.

What is more, it is not at all clear that such a policy, if it did exist and was applied to Mutasa's application, would have been unlawful.[3] As the Service points out, the *Vangala* litigation settled without any admission of wrongdoing. (Mot. at 6.) This leaves Mutasa to argue that the policy's reversal was evidence of its unlawfulness: "To demonstrate USCIS's malevolence in rejecting the I-140 Petition, Plaintiff offers the fact that USCIS recently reversed a related policy and returned to its longstanding practice of accepting and adjudicating forms with missing information, which Plaintiff alleges *amounts to a tacit admission* that Defendant knew all along that its actions exceeded the bounds of its regulatory authority." (Opp. at 10; see also *id.* at 15 ("by withdrawing the policy altogether, Defendant conceded its unlawfulness").) I find, however, that the inferential leap is unjustified. Agencies are permitted to change their policies and frequently do so under a new administration. It is well established that an agency may change its prior policy if "the new policy is permissible under the statute, and the agency ... acknowledges it is changing its policy and shows that there are good reasons for the new policy and that the agency believes it to be better, which the conscious change of course adequately indicates." G*uedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 133 (D.D.C.) (cleaned up), aff'd, 920 F.3d 1 (D.C. Cir. 2019).

---

[3]   Also, as I noted in the prior opinion, Mutasa's application did not contain a "blank space"; rather it was incomplete, missing an entire page. (DE 19 at 10.)

The final link in Mutasa's argument is that her situation is so similar to that of the plaintiffs in the *Vangala* litigation that the policy change they secured via settlement must also be applied to her. (Opp. at 13.) This argument is both unclear and unavailing. First, as discussed above, it is not clear that the policy at issue ever applied to her or was even unlawful. Second, and more importantly, it is lawful for the Service to apply different standards to applicants using different forms so long as it has a rational basis for doing so. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 955 (9th Cir. 2011). It would not be arbitrary and capricious for the Service to determine that applicants who have legal status and are already employed in the United States should be held to stricter standards of regularity than, say, asylum seekers applying from refugee camps. Thus, even if Mutasa had sufficiently pleaded that the Service refused to apply the *Vangala* policy change to her, she would still have failed to state a claim.

### C. Efficiency

Finally, Mutasa argues that the Service's practice of rejecting applicants for minor errors in their paperwork is inefficient and therefore an abuse of its discretion. (Am. Compl. ¶ 77.) The Amended Complaint also references a 2005 interoffice memo that instructed Service employees not to issue overly broad Requests for Evidence, because doing so can result in unnecessary paperwork. (*Id.* ¶ 76.) These allegations were presumably added to rebut the statements in my prior opinion that the Service has efficiency interests in having applicants fill out standardized forms completely. (DE 19 at 12.) The central point of my reasoning in the prior opinion was that exceptions beget more exceptions, potentially transforming a routine bureaucratic procedure into an inefficient case-by-case adjudication—or so the Service could reasonably have thought. Mutasa's opinion that the Service's practices are inefficient is not a sufficient basis for me to determine that the rejection of her application was arbitrary and capricious.

## IV. CONCLUSION

For the reasons stated in my previous opinion (DE 19), supplemented by those stated above, the Service's motion to dismiss the Amended Complaint is GRANTED. Because it appears that further attempts at amendment would be futile, the dismissal is with prejudice.

A separate order will issue.

Dated: February 1, 2022

/s/ Kevin McNulty
**Hon. Kevin McNulty**
**United States District Judge**